# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-** |
| v. | : | **DATE FILED:** _____ |
| **JESSIKA L. HIEPLER** | : | **VIOLATIONS:**<br>18 U.S.C. § 1343 (wire fraud – 2 counts) |
| | : | Notice of forfeiture |

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

### BACKGROUND

1. Between in or about 2008 and February 2022, defendant JESSIKA L. HIEPLER served at various times as a board member and as the manager, treasurer, and financial officer for American Legion Post 34 (Legion Post 34), a local post of the American Legion based in Lancaster, Pennsylvania.

2. The American Legion was chartered and incorporated by Congress in 1919 as a nonprofit patriotic veterans organization. Membership in the American Legion was open to active duty members of the U.S. Armed Forces, or honorably discharged veterans who served on active duty.

3. Between in or about August 2019 and February 2022, defendant JESSIKA L. HIEPLER also served as the steward and general manager of American Veterans Post 19 (AMVETS Post 19), a local post of the American Veterans based in Lancaster, Pennsylvania.

4. The American Veterans was chartered and incorporated by Congress in 1947 as a nonprofit patriotic veterans organization. Membership in AMVETS was open to active duty service members and to honorably discharged veterans who served in the U.S. Armed Forces.

5. Legion Post 34 and AMVETS Post 19 were distinct entities with no shared assets, property, or financial accounts.

6. In or about September 2017, defendant JESSIKA L. HIEPLER established American Patriot Realty LLC (APR), a for-profit real estate investment company which had a primary place of business at defendant HIEPLER's personal residence.

7. Between in or about 2019 and in or about 2022, defendant JESSIKA L. HIEPLER controlled the day-to-day financial and business operations of Legion Post 34, AMVETS Post 19, and APR, and had signatory authority on the bank accounts for Legion Post 34, AMVETS Post 19, and APR.

8. On or about July 30, 2019, APR purchased 715 Fairview Avenue, a 4-acre commercial property in Lancaster, Pennsylvania, from AMVETS Post 19 for $500,000.

9. On or about August 9, 2022, APR sold the 715 Fairview Avenue property for approximately $1.95 million.

10. On or about August 9, 2022, defendant JESSIKA L. HIEPLER and her business partner received approximately $1.425 million in net proceeds from APR's sale of 715 Fairview Avenue.

**THE FRAUD SCHEME**

11. From in or about March 2019, until in or about August 2022, in the Eastern District of Pennsylvania and elsewhere, defendant

**JESSIKA L. HIEPLER,**

with the intent to defraud, knowingly devised and intended to devise a scheme to defraud Legion Post 34 and AMVETS Post 19, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

12. The primary object of the fraud scheme was for defendant JESSIKA L. HIEPLER to obtain ownership and control of the AMVETS Post 19's valuable commercial property at 715 Fairview Avenue in Lancaster, Pennsylvania by means of theft, deceit, and misrepresentation. In executing the scheme, defendant HIEPLER defrauded both Legion Post 34 and AMVETS Post 19.

13. To carry out the scheme, defendant JESSIKA L. HIEPLER used, or caused to be used, wires and the facilities of interstate and foreign commerce.

**MANNER AND MEANS**

It was part of the fraud scheme that:

14. In or about April 2019, defendant JESSIKA L. HIEPLER offered to "bailout" AMVETS Post 19, which faced outstanding debt, unpaid bills, and declining sales, but was also in possession of a 715 Fairview Avenue, a valuable 4-acre property situated in Lancaster, PA.

15. In or about April, May, and June 2019, defendant JESSIKA L. HIEPLER knew the 715 Fairview Avenue property owned by AMVETS Post 19 had been appraised for at least $954,900.

16. Defendant JESSIKA L. HIEPLER conditioned her "bailout" of AMVETS Post 19 on obtaining ownership and control of the 715 Fairview Avenue property, which defendant HIEPLER offered to purchase from AMVETS Post 19 for the below-market price of $500,000 through her real estate investment company, APR.

17. During an AMVETS Post 19 membership meeting on or about May 7, 2019, and on other occasions between April and July 2019, defendant JESSIKA L. HIEPLER presented a "bailout" plan to the members and leaders of AMVETS Post 19, which included false and misleading representations, including the promise of an interest free loan, minimal rent, and full transparency.

18. In addition to making affirmative misrepresentations, defendant JESSIKA L. HIEPLER's "bailout" plan also omitted material facts known to defendant HIEPLER but concealed from AMVETS Post 19's members and leaders.

19. Defendant JESSIKA L. HIEPLER made these false and misleading representations, and concealed material facts, to deceive AMVETS Post 19's membership and leadership and to obtain their approval for her "bailout" plan, through which defendant HIEPLER planned to obtain control and ownership of the AMVETS Post 19's valuable commercial property for a below-market price.

20. In or about May or June 2019, defendant JESSIKA L. HIEPLER prepared and signed a written agreement to purchase the 715 Fairview property from AMVETS Post 19 for approximately $500,000 through her for-profit real estate investment company, APR. The sales agreement contained provisions contrary to the "bailout" plan presented to AMVETS Post 19.

21. On or about June 5, 2019, defendant JESSIKA L. HIEPLER submitted a loan application to Northwest Bank to fund APR's "purchase Lancaster Amvets Property as part

of [an] investment plan." In her loan application, defendant HIEPLER estimated the market value of the 715 Fairview Avenue property as approximately $954,900, nearly twice the purchase price offered by APR.

22. On or about June 11, 2019, defendant JESSIKA L. HIEPLER prepared and signed an undated lease agreement to lease the 715 Fairview Avenue property back to AMVETS Post 19, which was later postmarked July 11, 2019. The lease agreement contained provisions contrary to the "bailout" plan presented to AMVETS Post 19.

23. On or about July 30, 2019, defendant JESSIKA L. HIEPLER withdrew approximately $122,524.25 from the bank accounts of her employer, Legion Post 34, to partially fund APR's approximate $500,000 purchase of the 715 Fairview Avenue property from AMVETS Post 19.

24. On or about July 31, 2019, as the new Steward for AMVETS Post 19, defendant JESSIKA L. HIEPLER obtained control of the $221,475.36 in net sale proceeds realized by AMVETS Post 19 from its sale of 715 Fairview Avenue to APR.

25. On or about July 31, 2019, defendant JESSIKA L. HIEPLER transferred the entire $221,475.36 of net sale proceeds into APR's bank account, which she controlled, and defendant HIEPLER thereafter used most of these funds for her own benefit, and not on purposes related to, or for the benefit of, AMVETS Post 19.

26. Defendant JESSIKA L. HIEPLER never repaid AMVETS Post 19 for her withdrawals from the net sales proceeds of the 715 Fairview Avenue sale, and did not credit AMVETS Post 19 for using its money for her own purposes.

27. Between in or about May 2019 and August 2022, defendant JESSIKA L. HIEPLER planned ways to make money from the 715 Fairview Avenue property purchase,

including by reselling the property for a personal profit. For example, in her own words, defendant HIEPLER stated: "We sell that building and split it 50/50 … Buying up shit and making money" and "we will make our money and they [AMVETS Post 19] can kiss our ass … Because we corner all markets like the fucking boss bitches we are" and "I will do whatever it takes to make [our own venue] happen for us. / 5 year plan bitch…..we're doing it" and "Honestly all I want is my money. That's it. I could care fucking less about any of them."

28. Between in or about May 2019 and February 2022, defendant JESSIKA L. HIEPLER planned ways to evict AMVETS Post 19 from the 715 Fairview Avenue property. For example, in her own words, defendant HIEPLER stated: "I am ready to get rid of these motherfuckers. … I can't wait for shit to be ours" and "I can't wait to see their face when we hand them their eviction notice" and "their buy back is not gonna happen EVER" and "We have them by the balls … I just want them out … AMVETS will be gone in 3 to 4 months with eviction."

29. Between in or about August 2019 and February 2022, defendant JESSIKA L. HIEPLER manipulated and altered AMVETS Post 19's financial records. For example, in her own words, defendant HIEPLER stated: "Just wickedy-woo-ing the funds" and "I can make our P&L look however we want it to look."

30. Between in or about February 2021 and June 2022, defendant JESSIKA L. HIEPLER planned to obtain the valuable liquor license owned by AMVETS Post 19. For example, in her own words, defendant HIEPLER stated: "I WANT THEIR LIQUOR LICENSE / Idgaf about anything else."

31. Between in or about April 2019 and August 2022, defendant JESSIKA L. HIEPLER concealed her scheme, her self-dealing, and the truth about her actual intentions from the AMVETS Post 19 membership and leadership. For example, in her own words, defendant

HIEPLER stated: "They [AMVETS Post 19] don't need to know [an]y of our business" and "why should we care about them" and "I keep thinking of ways to fuck [the AMVETS Post 19 board members]."

32. On or about February 18, 2022, defendant JESSIKA L. HIEPLER caused a lawyer to prepare and file a lawsuit on behalf of APR and against AMVETS Post 19, which defendant HIEPLER personally approved and verified, and which contained material misrepresentations and omissions related to the payments, rent, taxes, and expenses associated with APR's ownership of, and AMVETS Post 19's occupancy of, the 715 Fairview Avenue property.

33. On or about August 9, 2022, approximately three years after APR purchased the 715 Fairview property for approximately $500,000, APR re-sold the property for approximately $1.95 million. After paying off its loan, settlement expenses, and outstanding property taxes, APR netted approximately $1,425,847.24 in profit from the property sale.

34. On or about August 9, 2022, defendant JESSIKA L. HIEPLER and her business partner split these sale proceeds, with APR transferring approximately $722,500 to defendant HIEPLER and approximately $703,073 to her business partner.

35. In late 2021 and early 2022, defendant JESSIKA L. HIEPLER destroyed financial and business records at both Legion Post 34 and AMVETS Post 19.

## WIRINGS

36. On or about each of the dates set forth in the chart below, in the Eastern District of Pennsylvania and elsewhere, having knowingly devised and intended to devise the scheme described above, defendant

**JESSIKA L. HIEPLER,**

for the purpose of executing this scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE (on or about) | DESCRIPTION OF INTERSTATE WIRE |
|---|---|---|
| 1 | July 30, 2019 | Electronic images transmitted by M&T Bank resulting from the deposit of a $72,514.25 official check drawn on Legion Post 34's First National Bank account. |
| 2 | September 13, 2019 | Electronic images transmitted by and between S&T Bank and JP Morgan Chase Bank resulting from the deposit of a $50,000 official check drawn on APR's Northwest Bank account. |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 1343, set forth in this information, defendant

**JESSIKA L. HIEPLER,**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to:

   a. the sum of money of $1,425,847.24;

   b. the real property located at 324 W Market St, Marietta, PA 17547, known as Marietta Tavern on Market; and

   c. Pennsylvania liquor license R14018, held by Marietta Tavern on Market LLC.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

*Christine & Ayues for*
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

JESSIKA L. HIEPLER

INFORMATION

Counts
**18 U.S.C. § 1343 (wire fraud – 2 counts)
Notice of Forfeiture**

A true bill.

_____
Foreperson

Filed in open court this _____ day,
Of _____ A.D. 20_____

_____
Foreperson

Bail, $_____